**United States District Court**
**District of Massachusetts**

```
_____
                                 )
Venkata Krishna Putluri,         )
                                 )
        Plaintiff,               )
                                 )
        v.                       )        Civil Action No.
                                 )        22-10647-NMG
FSSI Acquisition, Inc. and James )
Pelusi,                          )
                                 )
        Defendants.              )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from a dispute over the sale of a business, Full Spectrum Software, LLC ("Full Spectrum" or "the company").  The seller, Venkata Krishna Putluri ("Putluri" or "plaintiff"), has brought this action against James Pelusi ("Pelusi" or "defendant") and FSSI Acquisition, Inc. ("FSSI"), a Delaware corporation which Pelusi formed for the purposes of acquiring Full Spectrum.

Plaintiff asserts claims for breach of contract (Count I), breach of the covenant of good faith and fair dealing (Count II), tortious interference with a contract (Count III) and violation of M.G.L. c. 93A (Count IV).  He also seeks declaratory judgment that he is released from any indemnification obligation and is entitled to indemnification by

- 1 -

FSSI (Count V).  In the motion at hand, defendant/buyer moves to dismiss the claims against him for tortious interference with a contract and violation of Chapter 93A (Dkt. No. 10).  For the following reasons, the motion to dismiss will be allowed, in part, and denied, in part.

## I.  Background

The following facts are taken from the complaint and the documents incorporated by reference therein and are assumed to be true for the purposes of the present motion.  Putluri was the sole member and manager of Full Spectrum, a limited liability software engineering company based in Southborough, Massachusetts, from February, 2017 until December, 2020.  At the end of 2020, Putluri sold the company to FSSI and FSSI Holdings, LLC ("FSSI Holdings") pursuant to the terms of a Limited Liability Company Interest Purchase Agreement ("the Acquisition Agreement" or "the Agreement").

Pursuant to the Agreement, FSSI paid Putluri nearly all of the consideration due at the time of closing but retained an agreed-upon amount to be paid after the parties resolved any good faith claims for indemnification ("the Holdback Amount").  According to the Acquisition Agreement, FSSI was also required to pay Putluri additional consideration based upon revenue Full Spectrum earned between January 1, 2021, and December 31, 2021

("the Earnout Amount").  The Earnout Amount was subject to reduction in the event of any good faith claims for indemnification by FSSI.

Under Article VII of the Agreement, Putluri was required to indemnify FSSI for losses it suffered due to any misstatements or inaccuracies in the representations and warranties found in Article III.  Article III, in turn, warranted that Full Spectrum had no material obligations or liabilities, that it was in compliance with all contracts for its products and services and that it was not in breach of any lease agreements.

The Agreement prescribed different procedures for indemnification with respect to "Third Party Claims" brought by any third party against the indemnitee and "Direct Claims" for losses not related to a Third Party Claim.  Although both kinds of claims required the indemnitee to provide "reasonably prompt notice" of the subject claim, a Third Party Claim also entitled the indemnitor, Putluri, to assume control of the defense of that claim.

On December 6, 2021, Pelusi notified Putluri of two claims for indemnification on behalf of FSSI and FSSI Holdings.  One claim, the "Landlord Claim", related to Full Spectrum's purported failure to pay rent under a lease agreement.  The other claim, the "ZOLL Claim", related to Full Spectrum's allegedly sub-par performance under a contract with ZOLL Medical

- 3 -

Corporation.  Pelusi did not specify whether the claims were Third Party Claims or Direct Claims.

Putluri disputed both claims in January on the grounds that he lacked sufficient information to investigate them.  The following month, Pelusi responded with a letter that provided more detail and described the Landlord and ZOLL Claims as Direct Claims.  Pelusi also paid a reduced Earnout Amount to plaintiff, cutting the $3,000,000 due by $1,137,741 to reflect costs related to the Landlord Claim, costs related to the ZOLL Claim, FSSI's overpayment for Full Spectrum and attorney's fees and expenses.

In April, 2022, Putluri filed this action against Pelusi and FSSI.  He takes issue with multiple grounds for the $1,137,741 reduction to the Earnout Amount and the procedure by which FSSI handled the underlying Landlord and ZOLL Claims.  In addition, Putluri asserts that FSSI owes him interest on the portion of the Earnout Payment that was unrelated to either the Landlord Claim or ZOLL Claim.

## II.  **Motion to Dismiss**

### A. Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a

matter of law and "plausible on its face." Ashcroft v. Iqbal,
556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly,
550 U.S. 544, 570 (2007)).  A claim is facially plausible if,
after accepting as true all non-conclusory factual allegations,
the court can draw the reasonable inference that the defendant
is liable for the misconduct alleged. Ocasio-Hernandez v.
Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When considering the merits of a motion to dismiss, a court
may not look beyond the facts alleged in the complaint,
documents incorporated by reference therein and facts
susceptible to judicial notice. Haley v. City of Boston, 657
F.3d 39, 46 (1st Cir. 2011).  A court also may not disregard
properly pled factual allegations even if actual proof of those
facts is improbable. Ocasio-Hernandez, 640 F.3d at 12.  Rather,
the court's inquiry must focus on the reasonableness of the
inference of liability that the plaintiff is asking the court to
draw. Id. at 13.

**B. Application**

**i.  Tortious Interference with a Contract**

A successful claim for tortious interference with a
contract requires that a plaintiff prove

> (1) he had a contract with a third party; (2) the
> defendant knowingly induced the third party to break
> that contract; (3) the defendant's interference, in
> addition to being intentional, was improper in motive

- 5 -

or means; and (4) the plaintiff was harmed by the
defendant's actions.

Psy-Ed Corp. v. Klein, 459 Mass. 697, 715-16, 947 N.E.2d 520,
536 (Mass. 2011) (citation omitted).

In order to prevail on a claim brought against a corporate
officer acting within the scope of his employment, the plaintiff
must meet a heightened standard to show that the interference
was improper in motive or means.  The plaintiff must demonstrate
defendant's actual malice: "a spiteful, malignant purpose,
unrelated to the legitimate corporate interest." Id. (citation
omitted).

The complaint here adequately alleges that Pelusi was a
corporate officer acting within the scope of his duties at FSSI
and neither party disputes that characterization.  Nor does
either party purport that Pelusi, despite forming and
controlling FSSI, was a party to the Acquisition Agreement.  It
is unwarranted to conclude, therefore, at the motion to dismiss
stage that Pelusi was the "alter ego" of FSSI and thus not
liable for tortious interference with the Agreement. See
Chambers v. Gold Medal Bakery, Inc., No. BRCV2009-00716, 2009
Mass. Super. LEXIS 344, at *34 (Mass. Super. Ct. Sep. 17, 2009).

The parties disagree, however, on whether plaintiff has
alleged facts capable of meeting the heightened standard
necessary to show actual malice.  Putluri avers that Pelusi

induced FSSI to commit multiple breaches of contract, including withholding and delaying payments it owed to plaintiff, failing to give notice of the Landlord and Zoll Claims within a reasonable time, preventing plaintiff from supervising the defense of those claims and settling them without plaintiff's consent.  Putluri contends that those actions were obviously without justification and that FSSI's contention to the contrary is meritless and demonstrably false.  He further claims that Pelusi was motivated to interfere with the Acquisition Agreement "by a desire to obtain benefits from Putluri to which he would not otherwise be entitled."

In the memorandum in support of his motion to dismiss, defendant asserts that plaintiff's allegations do not support an inference of ill will and, apart from the single conclusory statement about his desires, do not even directly address his motivation.  Pelusi further argues that the claim should be dismissed because, at most, it can only be inferred that he acted in his own financial interest and that of his corporate employer. See, e.g., Am. Priv. Line Servs., Inc. v. E. Microwave, Inc., 980 F.2d 33, 37 (1st Cir. 1992) (holding that defendant did not exhibit an improper motive because "[i]ts sole motivation was its own financial benefit").

Although Pelusi argues that his desire for financial gain demonstrates that he did not have an improper motive, acting in

one's financial interest does not preclude a finding of actual malice.  See Hamann v. Carpenter, 937 F.3d 86, 90-92 (1st Cir. 2019) (finding that plaintiff failed plausibly to allege defendant was motivated by ill will but nevertheless holding that plaintiff set out "a plausible claim that [defendant] engaged in impermissible interference").  In the case at bar, Pelusi was not the corporate representative of a third-party company, unrelated to the contract, acting in its own independent interest.  Instead, he was the manager of FSSI, a party to the Acquisition Agreement, and he controlled its activities.  It cannot be said that causing a breach of contract in order to procure unjustified financial benefits for the breaching party represents the pursuit of a "legitimate corporate interest[,]" Psy-Ed Corp., 947 N.E.2d at 536 (citation omitted), rather than actual malice, as a matter of law.

Even so, the facts alleged here present a close question as to whether a reasonable factfinder could infer that Pelusi acted with actual malice.  Plaintiff argues, in essence, that the alleged breaches of contract caused by Pelusi were so egregious and blatant that they permit such an inference to be drawn.  He points to Gram v. Liberty Mut. Ins. Co., which held that

> [m]alice may be shown by the proof of facts from which
> a reasonable inference of malice may be drawn. The
> line between a proper inference and unwarranted
> conjecture is not easily drawn. The answer depends on
> the evidence in each case . . . .

384 Mass. 659, 664, 429 N.E.2d 21, 24 (Mass. 1981).

The Court agrees with plaintiff that the allegations here are sufficient to support a reasonable inference that defendant acted with actual malice. See Fraelick v. PerkettPR, Inc., 83 Mass. App. Ct. 698, 708, 989 N.E.2d 517, 525 (Mass. App. Ct. 2013) (holding that plaintiff's claim for tortious interference with a contract should not be dismissed because it "require[d] an assessment of state of mind[] and should be evaluated on the basis of a factual record"). Viewed in their totality, the facts alleged here state a plausible claim that Pelusi tortiously interfered with the Acquisition Agreement. Further development of the factual record will clarify the ultimate viability of Putluri's claim but, at this stage of the proceedings, the motion to dismiss will be denied as to Count III.

### ii.  Mass. General Laws Chapter 93A

Section 11 of M.G.L. c. 93A creates a private right of action for a person engaged in trade or commerce who is harmed by the unfair or deceptive acts or practices of another. In evaluating whether conduct constitutes an unfair act or practice actionable under the statute, a court looks to

> (1) whether the conduct is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and

>     (3) whether it causes substantial injury to consumers
>     or other businesses.

H1 Lincoln, Inc. v. S. Wash. St., LLC, 489 Mass. 1, 14, 179
N.E.3d 545, 557 (Mass. 2022) (cleaned up).

Courts in Massachusetts have described "commercial
extortion" as one category of actionable, unfair conduct.
Commercial extortion may take several forms, including the use
of breach of contract, threatened or actual, "as leverage to
extract additional benefits not covered by the contract." Id.
at 15. Breach of contract alone is not a sufficient basis for a
Chapter 93A violation. See, e.g., Composite Co. v. Am. Int'l
Grp., Inc., 988 F. Supp. 2d 61, 79 (D. Mass. 2013).

Putluri alleges that Pelusi induced FSSI wrongfully to
withhold over one million dollars of the Earnout Amount from him
in order to obtain benefits not bargained for under the
Acquisition Agreement. The relevant provisions of the
Agreement, however, entitled FSSI to reduce the Earnout Amount
in the event it had a good faith claim for indemnification,
i.e., FSSI had a contractual right to reduce the Earnout Amount.
Although Putluri forcefully contends that FSSI breached the
Agreement in this instance by reducing the payment for
unsubstantiated reasons and by use of an improper procedure, he
does not plausibly allege that Pelusi committed the breach, or
threatened to, in order to obtain an extra-contractual benefit.

In a situation such as this one, the Court is mindful that a breach of contract must have "an extortionate quality [giving it] the rancid flavor of unfairness" in order to violate Chapter 93A. Atkinson v. Rosenthal, 33 Mass. App. Ct. 219, 226, 598 N.E.2d 666, 670 (Mass. App. Ct. 1992).  The allegations here do not support an inference that the alleged breach of contract was motivated by an extortionate desire to cause plaintiff or a third-party "additional damages", or create "additional unfair benefits" for the defendant. Formulatrix, Inc. v. Rigaku Automation, Inc., No. CV 15-12725, 2016 WL 8710448, at *3 (D. Mass. Apr. 1, 2016).

Plaintiff contends that Formulatrix supports his position because FSSI "would not ordinarily be entitled" to withhold $1,137,741 of the Earnout Payment and doing so gives rise to Chapter 93A liability.  If plaintiff were correct that the disputed amount in a breach of contract claim, by itself, constituted an extra-contractual benefit, it would follow that any withholding of an amount due under a contract would constitute commercial extortion.

As already discussed, however, under Massachusetts law a plaintiff cannot prevail on a claim for violation of Chapter 93A based upon nothing more than breach of contract. See, e.g., Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 358 (1st Cir. 2013) (holding that Chapter 93A liability adheres when the facts

"illustrate something beyond a mere good faith dispute, failure to pay, or simple breach of contract"). Thus, the Court discerns no plausible basis for Chapter 93A liability here and the motion to dismiss will be allowed as to Count IV.

### ORDER

For the foregoing reasons, the motion to dismiss of defendant James Pelusi (Dkt. No. 10) is, as to the claim for violation of Chapter 93A (Count IV), **ALLOWED,** but as to the claim for tortious interference with a contract (Count III), **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated:  October 27, 2022

- 12 -